We will now proceed with the second case today, that is Grunt Style LLC v. TWD, LLC and we will hear first from Mr. Quinn. Whenever you're ready. Good morning, may it please the court, Darren Quinn on behalf of appellant TWD, LLC. My argument this morning will focus on why this court should reverse the partial summary judgment against TWD on its trademark infringement claims against Grunt Style. The court has de novo review as the non-moving party, TWD is entitled to all reasonable inferences. As the owner of the federally registered mark this will defend for t-shirts, TWD had a strong presumption of validity and exclusive use. As the owner of the federally registered trademark this will defend, TWD's federal rights preempted any conflicting state rights. And as this court has repeatedly said on a motion for summary judgment in trademark infringement cases must be approached with great caution. And finally Grunt Style had the burden to show that it owned unregistered common law rights in all 50 states on t-shirts. Now Grunt Style's opposition leads off with the entire case rests on the singular issue of trademark priority. Before we get there, counsel, is the is this really subject to trademark protection, common law or federal protection, this phrase? The phrase is entitled to federal trademark protection as has already been shown by the registration and by definition. We're not bound by that. I'm just wondering if this is seems to me this is a historical phrase that is pretty much laced into the fabric of the United States history and I just don't see where it's where it's subject to trademark protection by any commercial entity. I think you're right. I think the issue would be this will defend is an arbitrary phrase to describe a t-shirt. You don't say, hand me this will defend. It's a shirt. It's arbitrary. It's a brand and it's presented as a brand in the necklace. How about don't tread on me? Is that would that be subject to trademark protection? It is and actually my client in a prior company, Bauer Brothers, own that federal trademark case. That was the trademark case that I did against Nike and the Ninth Circuit. Was it ever challenged? It was challenged. The Ninth Circuit said that Plaintiff Bauer Brothers had the registered trademark, don't tread on me. And it was entitled to a presumption of validity. It's an unpublished decision, but that's what the Ninth Circuit said. I can provide that site if the court wishes. Any further questions? No, thank you. I think I have your position. Thank you. Counsel, when you're responding to Judge Ripple, it sounded to me like you're trying to say that what you're saying is it really means this will defend the t-shirt, not the country or this or that. Is that really how these are marketed? I didn't read any of the advertisements or anything to suggest someone's wearing that t-shirt saying, I'm going to defend the t-shirt. My client sold it as this will defend brand. So when you look in the neck label, it's a this will defend brand t-shirt. And an interesting point that's brought out in the opening, the U.S. Army that has the motto, this will defend, recognizes and respected TWD's trademark rights. They had an agreement saying, yes, we respect it. You can use it on clothing. You can use it on an online store that sells clothing. And we respected the Army and said, you can use your motto, this will defend. And so if you wanted a clear example of that for the U.S. Army, whose motto is this will defend, and it's lawyers that are in charge of licensing with respect to Army goods and services, including t-shirts, says, yes. I recognize and respect it. How do you get clearer than that? Good question. Did I answer your question? Yeah, I think what we're struggling with is, and it wasn't really addressed in either of the briefs and probably because both of you, both sides wanted to be a trademark of some kind. And the dispute is, you know, who has prior use and who owns it. But I think that the concern arises out of trying to figure out in what circumstances a phrase that has been used for eons can be converted into a trademark to designate the source of a particular item or service. I think that's kind of where it comes from. And I think that the, you know, the case that you mentioned, the don't try to meet case, I think it's something that we'll take a look at. I don't know if you're aware of other phrases, historical phrases like that, that have been contested and have been held valid. I know I'm putting you on the spot. I don't expect you to know to know it. But I'm just wondering whether you're aware of any other cases that would deal with issues like that. It would have been in the briefing in the Nike, Bauer Brothers versus Nike case regarding don't tread on me. I will alert the court. Really, what you're raising is a failure to function as a trademark issue. And that's a hot issue right now in the federal circuit. I don't have this cited. I just came down. Excuse my language. But the issue is whether or not they could get a trademark in the word fuck, F-U-C-K. And so the issue was there was a TTAB precedential opinion that talked about failure to function. And then the federal circuit said, look, we want some more. They reversed, but they said, basically, we want some more guidelines as to what that means on failure to function. And so they really didn't have a problem with that word fuck being a trademark. And that's a very commonly used word. Now, in this case, this will defend is not commonly used. Not like that word. And with respect to describing a brand of T-shirts, this will defend as arbitrary. And certainly neither side raised that issue before the district court, and the district court had no occasion to address it. Well, we argue. Oh, no, not the arbitrariness. But I mean, just whether or not the phrase can function as a trademark, per se. Well, we argue very strenuously that when Grunstyle uses this will defend on the front of a T-shirt, that's a failure to function as a trademark, fundamentally. Because they're in the business of selling T-shirts. They sell tens of thousands of these. T-shirts convey a message. That's the point. It's not trying to convey a trademark. It's conveying a message. And so that's a whole failure to function. And that's the way the Trademark Office looks at it as well. There's references to the TMEP, which is Trademark Examining Procedure, and saying that consumers, and ultimately, what do consumers, how do consumers look at this? They look at a shirt. They say, oh, that's an interesting shirt. They don't say, oh, that's a brand. If they see something uniformly all the time, like Grunstyle has on its sleeves, the composite mark with the six different elements, yeah, that's a trademark. But Grunstyle can't sever that bottom phrase, this will defend from that. This court has said repeatedly, in fact, very recently in the Illinois Tamale case, but before that in the Grubhub case, that you have to look at trademarks as a whole. And you can't sever their individual elements. And that really goes to, I want to make this point. So on the Grunstyle's composite mark, they have a registered mark on that. They said, look, nothing's conflicting. Trademark Office said, yeah, nothing's conflicting, including our prior registration or application for this will defend. But it has six elements. And if you look at the description of the mark, which is Exhibit 20, Summary Judgment Exhibit 21, which is Docket 176-9, it's got the description of the mark with the six elements. You've got two muskets and barrels crossed. You've got the words Grunstyle above the muskets, the letters GS centered beneath the muskets. GS, by the way, is the largest font. You've got the letters US on the left side, the number 1776 on the right. And then at the very bottom, you have this will defend beneath the muskets. Right. That's six elements. You don't get to sever that. The Trademark Office said that. Our case law says that. That's not how people understand it. It seems to me, though, that the district court's summary judgment ruling was a bit broader than that in finding that Grunstyle had used the motto in, for example, its advertising at trade shows. And as part of kind of just kind of identifying itself as a company and not limiting it just to the T-shirts it sold. Good question. Good point, too. All right. So TWD owns a trademark on goods. If you want to establish priority to knock out that trademark, you need to show a trademark on goods. All right. So that's not a service mark on a website. That's not a letterhead. That's not a banner at a trade show. You need to show what's on the goods. And when you look at it that way, they've got a bunch of old discontinued T-shirts that were sold a half a dozen times, just a handful of times in each state, certainly not all 50. And they're used in an ornamental manner, just like we just said. We really focused on that one skull and crossbones with America as the biggest. And it's got U.S. in 1776. It's got seven elements. That's even more than the composite mark. Are you saying that because it was on the front of the T-shirt that Grunstyle has a trademark in U.S. in 1776? How about the top word, America? Do they own a trademark in America? No. I want to reserve some time for rebuttal. Counsel, let me, I'd like you to address briefly the prejudgment interest. You're citing to Laughlin and then we have Gornstein as well. If we want to take your position on prejudgment interest, are we revisiting Gornstein? You know, I don't know. I think that the court has the power to interpret the statute based on the circuit split, because now there's definitely a circuit split. And say, this is, you know, there is no prejudgment interest. I don't know whether or not from a circuit point, if that has to be done en banc or not. I don't, I'm going to leave that to you. Do you have any rule that wouldn't conflict with Gornstein? The statute itself, when the B says you get prejudgment interest, A doesn't. And Gornstein didn't grapple with that tension as much, but nothing's changed since Gornstein, correct? I mean, the statute hasn't changed.  So it's just an argument that wasn't addressed in Gornstein, but you'd agree that the holding of Gornstein controls. I guess it's the 7th, when the 7th Circuit says something, that's the 7th Circuit law. I don't know what the procedure would be. Certainly an en banc review could resolve a split if there's an issue or if a 7th Circuit opinion has to change. I just don't know exactly your procedure. I'm sorry. May I reserve the rest for rebuttal? Yes. Are there further questions? Thank you. Thank you. Mr. DePriter. Good morning, Your Honor. Your Honor, may it please the Court. Matthew DePriter on behalf of Grunstyle, and I'm here to discuss Grunstyle's trademark, This Will Defend. This case does hinge on priority, and we go back to the SC Johnson case that states it clearly. Priority of use is the bedrock principle of trademarks. The person that uses it first is the owner. That's exactly how trademarks work. And in this case, Grunstyle used This Will Defend first to identify its company and its services, selling of t-shirts, and an online web store. An online web store would sell all different kinds of products, including t-shirts. And it consistently and continuously used This Will Defend for all of those uses. Used it on its t-shirts, it used it on its website, and that's exactly the evidence that was presented to the district court. TWD takes an extremely myopic view of what might constitute trademark use, and it does so in only a single instance throughout its brief, focusing on one particular t-shirt and focusing on an extremely narrow time frame that it arbitrarily selected to be the time frame when it started selling t-shirts and when it filed its trademark registration. That's not even the right time frame. The whole point of trademark priority is who used it first. You can't start a test about who used it first by looking at when the junior user first started using it and then examining what uses happened after that. You have to look at when the senior user started using the mark and when they started using it first, and that's exactly what GruntStyle showed at summary judgment. It showed that starting in 2011, it was selling t-shirts online through its online retail store using the mark This Will Defend, and we have examples of that website showing the use of This Will Defend in the header and on the tab. Back in 2011 and forward, it started using it on t-shirts, on its collar tags, on its hang tags, and forward, and once GruntStyle established that it was the priority senior user of the mark, it established that it has use. It owns the mark as do all secondary comers, and now TWD wants to come in and say, well, we registered the mark later. Registration of mark bows to priority use of common law marks. It's exactly what the Johnny Blastoff and SC Johnson cases talk about. The registration is a presumption of ownership, and that's it. It doesn't actually confer trademark rights. The law is very clear that that registration is not actually a conferring of trademark rights. Now, it may give you some bonuses, some benefits, but it doesn't confer the rights. What confers rights is the actual use in commerce, and you have to be the first one to use it. There is no strong presumption that TWD would like to advance. In fact, the law says that once you present evidence that there is a senior user, the presumption evaporates. The law literally says evaporates. It's not, well, we continue to hold this presumption because it's strong, and we really need to focus on what all the evidence is. No, when the evidence of senior use is presented, the presumption evaporates, and then it is up to that junior user to try and come in and present evidence of its own ownership. TWD didn't even do that. Throughout its brief, it relies on the stricken expert report of Mr. Watchpress, and you heard Mr. Quinn talk about how they strongly and vehemently disagree with the way in which Grunstyle used it, and it might be ornamental on a particular shirt. That's all Watchpress's stricken opinion, and the district court was correct to strike that. And that was an abuse of discretion standard to review that decision to strike his expert report, and TWD didn't even address that here today. When we go forward and we say, well, what about these other uses and the uses throughout the 50 states, Grunstyle presented that evidence at the district court level, and that's exactly what Judge Koukouris found. He found that we used it on our t-shirts, on our website, in other ancillary uses associated with the presentation of our t-shirts and our website online retail store services, and that's supported by the case law, particularly the Johnny Blastoff and SC Johnson cases that talk about any use of your trademark can go towards establishing that you are the senior user. It doesn't have to be specific trademark use on the exact identical product, and what it talks about in the case law is that all manner of uses, uses on the product, uses associated with the product in advertisements, newspapers, magazines, websites, all of that is in the pool for establishing that you are the one that appropriated that mark first. To briefly touch on, Judge Ripple, your comment about, well, are there other marks out there that are well known? The This Will Defend has been registered, obviously it was registered by TWD, and it's been registered by others. There's a beer company that uses This Will Defend. Now, they sell beer, they don't sell t-shirts, and they don't sell online retail store services like Grunstyle does, so that's a different trademark, not really an issue. The Army, the Navy, the Marines all have a suite of trademarks, such as the Mullen Lave or Semper Fi for the Marines. They own those trademarks, and they police them, and they license them. They do not own the trademark for This Will Defend, it's not among the things that they license, and that's actually in the summary judgment record. There's license agreements between Grunstyle and the various branches of the government detailing the phrases and things that the government says we own for our trademarks, and Grunstyle licenses them. This Will Defend is not among them, and Grunstyle is the one that first appropriated and used that mark in commerce for its goods and its services. I'd like to touch on, because Your Honor raised that the pre-judgment interest, and not only does the Seventh Circuit's case law control, but I think if you look at the statute, it broadly supports exactly what the district court did. You look at the difference between 117A and B. In B, you have to specifically point out that interest might be allowable, because what B says is you can treble the damages in a punitive manner, and then, if you want to, you can add pre-judgment interest onto that punitive damage. That's not compensatory at all. The whole point of 17A is we have to compensate, fully and fairly, this party that was wronged, and here, Grunstyle was the party that was wronged. TWD got years of use, infringing use, out of its trademark, out of this Will Defend trademark, that was Grunstyle's. They jury determined that there was, you know, damages there, and TWD had been using those profits to benefit itself, and it had the time value of money associated with those profits for years, and so, to fully and fairly compensate the party that was wronged, 117 says, your judge, district court judge, if you think that this amount needs to be adjusted to fully and fairly compensate, it's in your discretion to make that adjustment, and that's exactly what pre-judgment interest does. It makes sure that the time value of money that the infringer had benefit of, they don't get the benefit of that. That's part of the damage that Grunstyle, had it had the time value of money, would have been entitled to throughout that entire period of time. I'd like to answer any questions that the panel may have. I think that when you look at what is this case about, it comes down to that, who's first? Grunstyle was clearly first. The evidence supports that. TWD tries to make in its reply, if you look at the reply briefing, which goes into a long discussion of attacking, which is not an issue here and never had been. It then transitions into a complaint about all of the other uses that it acknowledges Grunstyle made of this will defend, and it says, well, don't pay attention to any of those because that was by some prior entity, Grunstyle Georgia. Well, they didn't even appeal that ruling. That was an issue at summary judgment. Grunstyle came to the court and said this complaint by TWD that Grunstyle's predecessor in interest, Grunstyle Georgia, that then transitioned into Grunstyle Illinois and is now Grunstyle LLC, a Delaware entity. That transition happened smoothly and consistently, and just like any other company that moves along the line, all the rights go along with it, and the district court said, yes, that is the law. That's exactly how that's supposed to work, and yes, the rights transfer along with you. And so when TWD now tries to again resurrect this arbitrary and artificial distinction in admitting that Grunstyle was using its mark on its products throughout that period of time, well, that issue's already been decided, and it's not appealed. They waived it. And there are a number of other waiver issues here. The preemption argument is also waived. That was raised at summary judgment. Grunstyle briefed it. We've laid out the reasons why the federal preemption argument that TWU is trying to assert as an affirmative defense was improper and should be stricken. TWD decided not to address that. And the district court said, well, as you try and raise this on reconsideration, you already waived it. You didn't address the arguments that Grunstyle made. And in any case, it doesn't matter. Counsel, the question I had was, reading the district court summary judgment opinion, the district court found as a matter of law that there's likely a confusion here. Typically, you know, in trademark cases, part of the evidence presented to the district court with regard to likelihood of confusion are things like consumer survey evidence and expert evidence with regard to confusion. What sort of evidence was presented here with regard to likelihood of confusion in the district court? Sure. We presented all of Grunstyle's uses, and that was all supported by the declaration and unimpeached testimony of Mr. Alaric over the course of years. And then we presented uses that were made by TWD. Now, the likelihood of confusion is four-factor, multi-factor test. No single factor controls, but some factors can override others, and even a single factor can be sufficient. Here, the identity of the marks and the same category of goods, sale of t-shirts, online retail store, web services, all are identical, so overlapping and so overwhelmingly the same that the district court was correct and proper in determining, yes, there were likelihood of confusion at issue. Thank you. Thank you. Mr. Quinn, in light of our colloquy, we'll give you two minutes for rebuttal. Thank you. Interesting issue is the level of evidence that has to be shown to show priority. If you had common law mark versus common law mark, and you're a child, I'd agree it's preponderance. What if it's common law mark versus registered mark that enjoys a presumption of validity? It seems like the level of evidence needs to be somewhat higher. I want to respond to Grunstyle's argument, oh, we've used it first, and we've used it continuously. Grunstyle's the one that cited the Supreme Court case on tacking. So the way tacking works with priority is it needs to be the same mark, and that's what we discussed in the reply brief. If there's differences in the mark, it doesn't tack. And if you look at the supplemental appendix, it shows the different t-shirts. All of those t-shirts are different. And it's stopped. It's not continuous. They need to show active use. They need to show it keep going with the same mark. They just can't show that with the word, this will defend on its own. All they can show is this will defend either with in connection with a ornamental design on a t-shirt or in connection with the registered composite mark. That doesn't work. You can't sever that. You have to look at it the whole. And I'm here to answer any questions. Thank you very much. Thank you. The case will be taken under advisement.